**MARQUETTE NATIONAL BANK OF MINNEAPOLIS, Plaintiff,**

v.

**FIRST NATIONAL BANK OF OMAHA et al., Defendants.**

No. 4–76 Civ. 251.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 19, 1976.

---

John Troyer, and J. Patrick McDavitt, Levitt, Palmer, Bowen, Bearmon & Rotman, Minneapolis, Minn., for plaintiff.

**1348**

Clay R. Moore and Frank A. Dvorak, Mackall, Crounse & Moore, Minneapolis, Minn., together with Donald J. Buresh, Swarr, May, Smith & Andersen, Omaha, Neb., for defendants First National Bank of Omaha and First of Omaha Service Corporation.

James W. Brehl, Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., for defendant Credit Bureau of St. Paul, Inc.

## MEMORANDUM ORDER

ALSOP, District Judge.

The plaintiff, Marquette National Bank of Minneapolis (Marquette Bank), is a national banking association located and having its principal place of business in Minneapolis, Minnesota. The defendant First National Bank of Omaha (Omaha Bank) is a national banking association located and having its principal place of business in Omaha, Nebraska. The defendant First of Omaha Service Corporation (Omaha Service Corporation) is a Nebraska corporation qualified to do business in Minnesota. The defendant Credit Bureau of St. Paul, Inc. (Credit Bureau) is a Minnesota corporation.

The case was commenced in the District Court of Hennepin County, Minnesota, by service of a summons and complaint on the Omaha Bank, the Omaha Service Corporation and the Credit Bureau. The Credit Bureau filed an answer. Pursuant to 28 U.S.C. § 1441 et seq., the defendants then joined to remove the case to this court. Subsequent to the filing of the removal petition, the plaintiff voluntarily dismissed as to the Omaha Bank. The plaintiff moves to remand.

The complaint sets forth the plaintiff's causes of action in five counts. Count I substantially alleges that through acts of the Omaha Service Corporation and the Credit Bureau the Omaha Bank has induced Minnesota residents to contract with the Omaha Bank's BankAmericard program and that the Omaha Bank's BankAmericard program assesses finance charges at rates in excess of those allowed by the Minnesota Bank Credit Card Act, Minn.Stat.Ann. § 48.185.[1]

Count II, after repeating the allegations of Count I, alleges in effect that the defendants Omaha Service Corporation and the Credit Bureau have themselves violated

1. Minn.Stat.Ann. § 48.185 provides in pertinent part:

    (1) Any bank organized under the laws of this state, any national banking association doing business in this state, and any savings bank organized and operated pursuant to Minnesota Statutes, Chapter 50, may extend credit through an open end loan account arrangement with a debtor, pursuant to which the debtor may obtain loans from time to time by cash advances, purchase or satisfaction of the obligations of the debtor incurred pursuant to a credit card plan, or otherwise under a credit card or overdraft checking plan.

    \* \* \* \* \* \*

    (3) A bank or savings bank may collect a periodic rate of finance charge in connection with extensions of credit pursuant to this section, which rate does not exceed one percent per month computed on an amount no greater than the average daily balance of the account during each monthly billing cycle.

    \* \* \* \* \* \*

    (6) This section shall apply to all open end credit transactions of a bank or savings bank in extending credit under an open end loan account or other open end credit arrange-

    ment to persons who are residents of this state, if the bank or savings bank induces such persons to enter into such arrangements by a continuous and systematic solicitation either personally or by an agent or by mail, and retail merchants and banks or savings banks within this state are contractually bound to honor credit cards issued by the bank or savings bank, and the goods, services and loans are delivered or furnished in this state and payment is made from this state.

    \* \* \* \* \* \*

    (7) Any bank or savings bank extending credit in compliance with the provisions of this section, which is injured competitively by violations of this section by another bank or savings bank, may institute a civil action in the district court of this state against that bank or savings bank for an injunction prohibiting any violation of this section.

    \* \* \* \* \* \*

    The relief provided in this subdivision is in addition to remedies otherwise available against the same conduct under the common law or statutes of this state.

    \* \* \* \* \* \*

and have conspired with the Omaha Bank to violate the Minnesota Bank Credit Card Act.

Count III, repeating all previous allegations, substantially alleges that the solicitation campaign conducted by the defendants on behalf of the Omaha Bank's BankAmericard program is carried on in violation of the Minnesota Deceptive Trade Practices Act, Minn.Stat.Ann. § 325.772. Specific deceptive trade practices are then alleged.

Count IV, repeating all previous allegations, alleges in effect that the defendants have violated and have conspired to violate both the Bank Credit Card Act and the Deceptive Trade Practices Act.

Count V, repeating all previous allegations, alleges that the defendants engaged in unfair competition and tortiously interfered with the plaintiff's contractual relationships with the plaintiff's BankAmericard customers.

The plaintiff seeks a permanent injunction, compensatory damages, and punitive damages.

■ Preliminarily, it should be noted that, in general, removability of an action under 28 U.S.C. § 1446 is to be determined as of the time the removal petition is filed. Therefore, the proceedings in a case subsequent to removal will not defeat federal jurisdiction. 1A J. Moore, *Federal Practice* ¶ 0.157[12], at 155 (2d ed. 1974).

The determination of whether a case commenced in a state court may be removed to federal court is governed by the provisions of 28 U.S.C. § 1441:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
>
> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
>
> (c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

The first issue presented to the court is whether this court has removal jurisdiction based upon diversity of citizenship. Removal jurisdiction is keyed to original federal jurisdiction. Original jurisdiction in diversity cases in which the amount in controversy exceeds $10,000 requires that there be complete diversity. 28 U.S.C. § 1332. Removal jurisdiction requires both that there be complete diversity and that no defendant be a citizen of the forum state. 28 U.S.C. § 1441; 1A J. Moore, *Federal Practice* ¶ 0.161[1], at 197, 205 (2d ed. 1974).

If the court were to accept the characterizations of the parties as plaintiff and defendant as contained in the complaint, it is clear that there would be neither original nor removal jurisdiction based on diversity of citizenship. There would be no original jurisdiction because both the plaintiff and the defendant Credit Bureau are citizens of Minnesota. There would be no removal jurisdiction because the defendant Credit Bureau is a citizen of Minnesota, and Minnesota is the state in which the action is brought.

■■ It is also clear, however, that the characterizations of the complaint are not controlling if there has been fraudulent joinder. 1A J. Moore, *Federal Practice* ¶ 0.161[1], at 199 (2d ed. 1974). Under such circumstances parties must be aligned according to their real interests. *Boatmen's*

*Bank v. Fritzlen*, 135 F. 650 (8th Cir.), *cert. denied*, 198 U.S. 586, 25 S.Ct. 803, 49 L.Ed. 1174 (1905). Therefore, a defendant who is fraudulently joined is to be disregarded in determining the existence of diversity jurisdiction. 1A J. Moore, *Federal Practice* ¶ 0.161[2], at 210 (2d ed. 1974). Whether the joinder is fraudulent or not depends on whether the plaintiff really intended to obtain a judgment against the defendant whose joinder is alleged to be fraudulent. *Bolstad v. Central Surety & Ins. Corp.*, 168 F.2d 927 (8th Cir. 1948); *Harrelson v. Missouri Pac. Transp. Co.*, 87 F.2d 176 (8th Cir. 1936); *Huffman v. Baldwin*, 82 F.2d 5 (8th Cir.), *cert. denied*, 299 U.S. 550, 57 S.Ct. 12, 81 L.Ed. 405 (1936); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390 (8th Cir. 1935).

■ The plaintiff's complaint states causes of action based on conspiracy, deceptive trade practices and tortious interference with contractual relations against the Credit Bureau. Although it denies liability, the Credit Bureau admits certain of the acts complained of. It, therefore, seems that the plaintiff really intends to obtain a judgment against the Credit Bureau. Thus, the plaintiff's joinder of the Credit Bureau is not fraudulent, and removal on the basis of diversity of citizenship would be improper.

The second issue presented to the court is whether this court has removal jurisdiction based on a claim which, in fact, arises under the Constitution or laws of the United States. It is clear that the causes of action relating to conspiracy,[2] deceptive trade practices, unfair competition and tortious interference with contractual relations do not state claims arising under federal law. The dispute concerning original jurisdiction based upon a federal question derives from the cause of action alleging that the interest rates charged by the Omaha Bank's BankAmericard program violate Minnesota law. The plaintiff argues that the complaint as filed in state court neither raises nor asserts any federal right or question, but that to the contrary it is one based solely on rights created by the Minnesota Bank Credit Card Act. The defendants, on the other hand, contend that the cause of action alleging an illegal interest rate, notwithstanding the plaintiff's characterization thereof as a violation of Minnesota law, must be construed as a claim that 12 U.S.C. § 85[3] has been violated. The defendants urge that because 12 U.S.C. § 85 preempts

2. The defendants argue that allegations of a conspiracy in which a national banking association is claimed to have conspired with others to charge excessive interest rates necessarily present a federal question because interest rates charged by national banking associations are governed by federal statute and any conspiracy to violate a federal statute would present a federal question. The court does not agree. A cause of action alleging a civil conspiracy is a state law claim whether the statute to be violated is state or federal. *See Iowa ex rel. Turner v. First of Omaha Serv. Corp.*, 401 F.Supp. 439 (S.D.Iowa 1975).

3. 12 U.S.C. § 85 (1976) provides in pertinent part:

Any [national banking] association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidence of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, or in the case of business or agricultural loans in the amount of $25,000 or more, at a rate of 5 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal reserve district where the bank is located, whichever may be the greater and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter. When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge at a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, or in the case of business or agricultural loans in the amount of $25,000 or more, at a rate of 5 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the bank is located, whichever may be the greater . . . .

state regulation of interest rates charged by national banking associations, any claim that interest rates are excessive can only be litigated as a claim arising under that statute. If the plaintiff's claim does raise a federal question based solely upon 12 U.S.C. § 85, it is undisputed that original federal jurisdiction is invoked pursuant to 28 U.S.C. § 1337. *Burns v. American Nat'l Bank & Trust Co.*, 479 F.2d 26 (8th Cir. 1973).

If the cause of action alleging the charging of excessive interest rates actually set forth claims which arise only under 12 U.S.C. § 85, removal was clearly in order; if it does not, remand is required. The court concludes that the plaintiff's claim based on the allegation that the Omaha Bank charges excess rates of interest does not arise under 12 U.S.C. § 85, and, therefore, remand is required.

The traditional rule in removal proceedings prohibits the court from looking outside the plaintiff's own complaint to determine whether or not a suit arises under federal law. The Supreme Court has stated the applicable tests in *Gully v. First Nat'l Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936):

> [A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and antici-

pates or replies to a probable defense. [citations omitted]

■ It is undisputed that where the plaintiff's claim involves both a federal ground and a state ground, the plaintiff is normally free to ignore the federal question and assert only the state ground as a basis for his claim. 1A J. Moore, *Federal Practice* ¶ 0.160, at 185 (2d ed. 1974). As the Supreme Court noted in *Great Northern Ry. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 239, 62 L.Ed. 713 (1918):

> [T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case . . when it is commenced, and . . . this power to determine removability . . . continues with the plaintiff throughout the litigation, so that whether such a case . . . shall afterwards become removable depends . . . solely upon the form which the plaintiff by his voluntary action shall give to the pleadings . . . .

■ It is clear that the plaintiff intends to base its claims regarding the Omaha Bank's interest rates on state grounds. The plaintiff initially brought the case in state court. At no point in its complaint did the plaintiff so much as allude to 12 U.S.C. § 85, nor has it ever indicated any desire to rely on such a law. Indeed, the plaintiff has vociferously disclaimed any desire or intention to recover on anything other than a state law cause of action.

■ However, it is also clear that 12 U.S.C. § 85 governs the interest rates chargeable by national banks. It is equally clear that § 85 allows national banks to select an interest rate established by state law for state banks.[4] Thus, although a state by its regulation of interest rates chargeable by state banks may control the rate of interest which some national banks have selected, the state may not prohibit a national bank from selecting another rate

---

**4.** The court expresses no opinion as to whether the Omaha Bank is limited to selecting a rate of interest chargeable by state banks in Minnesota when the Omaha Bank extends credit through its BankAmericard program to resi-

dents of Minnesota. *Compare Meadow Brook Nat'l Bank v. Recile*, 302 F.Supp. 62 (E.D.La. 1969), *with Fisher v. First Nat'l Bank*, 538 F.2d 1284 (7th Cir. 1976).

of interest which might permit the bank to charge interest rates in excess of that allowed to state banks. Such is the case because federal law preempts state law in the area of regulation of interest rates chargeable by national banks. *Haseltine v. Central Bank of Springfield*, 183 U.S. 132, 22 S.Ct. 50, 46 L.Ed. 118 (1901); *Farmers' & Mechanics' Nat'l Bank v. Dearing*, 91 U.S. 29, 23 L.Ed. 196 (1875); *American Timber & Trading Co. v. First Nat'l Bank*, 511 F.2d 980 (9th Cir. 1973), *cert. denied*, 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975); *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684 (E.D.Pa.1973).

The defendants contend that the plaintiff's claim that the Omaha Bank assesses finance charges which are excessive is a claim arising under the laws of the United States. This contention is based upon an assumption that because federal law has preempted state law in the area and therefore governs the ultimate determination of the claim, the plaintiff has no state law claim based on excessive interest rates and states a federal claim whether he wishes to do so or not. *See Avco Corp. v. Aero Lodge 735, IAM*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Hearst Corp. v. Shopping Center Network, Inc.*, 307 F.Supp. 551 (S.D.N.Y.1969); *Sylgab Steel & Wire Corp. v. Strickland Transp. Co.*, 270 F.Supp. 264 (E.D.N.Y.1967); *Fay v. American Cystoscope Makers, Inc.*, 98 F.Supp. 278 (S.D.N.Y. 1951).

The defendants contend that the issue of the existence of a federal question is controlled by the rule laid down in *North Davis Bank v. First Nat'l Bank*, 457 F.2d 820 (10th Cir. 1972). The plaintiff in *North Davis Bank* argued that removal was improper because the complaint which it had filed in state court neither raised nor asserted any federal right or question but that the complaint was one based solely on a violation of state law. The defendant maintained, and the court agreed, that even though federal law allowed national banks to establish and operate branch banks only if the host state permitted state banks to do so, the case was one having its source in and arising under

federal law and that the case was properly removed as one arising under federal law. Likewise, the defendants here assert that, although the plaintiff states its claim solely in terms of a violation of Minn.Stat.Ann. § 48.185, the plaintiff's claim that the Omaha Bank's BankAmericard program assesses finance charges in excess of those allowed by law is to be justiciable only under 12 U.S.C. § 85. The defendants further assert that, therefore, the real nature of the claim is federal, irrespective of the plaintiff's characterization of its claim as a state law claim.

■ The court realizes that there is substantial support for the defendants' argument that federal question jurisdiction is present in cases in which federal law preempts the state law under which the cause of action arises. *See, e. g., Avco Corp. v. Aero Lodge 735, IAM*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *North Davis Bank v. First Nat'l Bank*, 457 F.2d 820 (10th Cir. 1972); *Ulichny v. General Elec. Co.*, 309 F.Supp. 437 (N.D.N.Y.1970); *Suburban Trust Co. v. National Bank of Westfield*, 211 F.Supp. 694 (D.N.J.1962); 1A J. Moore, *Federal Practice* ¶ 0.160, at 186 (2d ed. 1974). The court, however, does not think that the defendants' argument correctly states the law. 13 Wright & Miller, *Federal Practice & Procedure* § 3562 and § 3571, at 478 (1975). Federal preemption may offer a valid defense to a state law claim, but preemption does not convert a state law claim to which preemption is a defense into a claim arising under federal law. *E. g., Pan American Petroleum Corp. v. Superior Court*, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961); *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933); *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339 (3d Cir. 1974), *cert. denied*, 421 U.S. 987, 95 S.Ct. 1666, 44

L.Ed.2d 94 (1975); *Washington v. American League*, 460 F.2d 654 (9th Cir. 1972); *Bastrop Loan Co. v. Burley*, 392 F.Supp. 970 (W.D.La.1975); *City of New Orleans v. United Gas Pipe Line Co.*, 390 F.Supp. 861 (E.D.La.1974); *New York ex rel. Lefkowitz v. Transcience Corp.*, 362 F.Supp. 922 (S.D. N.Y.1973); 13 Wright & Miller, *Federal Practice & Procedure* § 3562 and § 3571 (1975).

The court thinks that the law is well-stated in *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). In *Gully*, the Supreme Court stated:

> By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. *Id.* at 116, 57 S.Ct. at 99.

Thus, although federal law may well be determinative in a case in which a federal statute is raised as a defense to a state law claim, the case is not transformed automatically into one arising under federal law because of a preemption defense. In the present case, 12 U.S.C. § 85 comes into the case only by way of defense to a state-created claim. 13 Wright & Miller, *Federal Practice & Procedure* § 3571, at 478 (1975).

The court concludes that removal was not proper because the claim that the Omaha Bank charges unlawful rates of interest is not one which arises under the laws of the United States. Therefore, remand is in order.

Even if the claim that the Omaha Bank charges unlawful rates of interest were to be considered as arising under federal law, this court would nevertheless be inclined to order remand.

If the claim that the Omaha Bank charges unlawful rates of interest had been one which allowed removal, the entire case could have been removed pursuant to 28 U.S.C. § 1441. The claim that the Omaha Bank, the Omaha Service Corporation and the Credit Bureau conspired to charge rates of interest in excess of those allowed by law would be removable as a claim pendent to the one arising under federal law. The claims of deceptive trade practices, conspiracy to engage in deceptive trade practices, unfair competition and tortious interference with contract would be removable as separate and independent claims which had been joined with an otherwise removable claim.

■ It has long been recognized that federal courts have jurisdiction of a state law claim which is so closely related to a federal question as to be within the ancillary, or pendent, jurisdiction of the federal court. *See Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). A state law claim is pendent if the state and federal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The claims that the Omaha Bank is charging unlawful rates of interest and that the Omaha Service Corporation and the Credit Bureau conspired with the Omaha Bank to allow the Omaha Bank to do so derive from a common nucleus of operative fact. Therefore, the conspiracy claim would have been removable if the Marquette Bank's claim that the Omaha Bank charges an unlawful rate of interest had arisen under federal law.

■ Pursuant to 28 U.S.C. § 1441(c), a federal court may exercise jurisdiction over the entire case whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action. Claims are separate and independent if the rights which the plaintiff seeks to enforce are distinct. 1A J. Moore, *Federal Practice* ¶ 0.163[4.5], at 708 (2d ed. 1974). The right of a competitor to be free of deceptive trade practices and unfair competition and the right of a party to a contract to be free of an outsider's interference with the contract are rights which are clearly distinct from the right to expect that a bank will charge rates of interest within the limits

established by law. Therefore, the entire case would have been removable if the Marquette Bank's claim that the Omaha Bank charges an unlawful rate of interest had arisen under federal law.

However, even if the entire case had been properly removed, the court would remand the non-federal claims to the District Court of Hennepin County, Minnesota. Although 12 U.S.C. § 1441(c) provides that the federal court may determine all the issues in a case in which a removable claim is joined with one or more separate and independent non-removable claims, the court is not required to do so. Pursuant to another provision of § 1441(c), the court may remand all matters not otherwise within its original jurisdiction.

The claims against the Omaha Service Corporation and the Credit Bureau are state law claims over which the court would have no original jurisdiction. Therefore, the court is not required to retain jurisdiction over the claims against the Omaha Service Corporation and the Credit Bureau.

Subsequent to the defendants' filing of the removal petition and prior to the Omaha Bank's serving of an answer, the plaintiff entered a voluntary dismissal as to the Omaha Bank pursuant to Rule 41(a)(1)(i), Fed.R.Civ.P. Because the claim against the Omaha Bank is the only one which arguably arises under the laws of the United States, there is no longer any claim arising under federal law before the court. Because no claim arising under federal law is still before the court, the court is persuaded that the remaining claims should be remanded. It appears to this court inappropriate to retain jurisdiction "where the federal head of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims." *See Murphy v. Kodz*, 351 F.2d 163 (9th Cir. 1965); *Rotermund v. United States Steel Corp.*, 346 F.Supp. 69 (E.D.Mo.1972), *aff'd*, 474 F.2d 1139 (8th Cir. 1973). In this instance, it would make little sense to retain jurisdiction and to determine the non-federal claims even though the claim which served as a basis for federal

jurisdiction is no longer at issue in the case and the defendant against whom that claim was asserted is no longer before the court.

Upon the foregoing,

IT IS ORDERED That the claims against the Omaha Service Corporation and the Credit Bureau be and the same hereby are remanded to the District Court of Hennepin County, Minnesota.